**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Yeremey Krivoshey (State Bar No. 295032)
Blair E. Reed (State Bar No. 316791)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
         ykrivoshey@bursor.com
         breed@bursor.com

**REICH RADCLIFFE & HOOVER LLP**
Marc G. Reich (State Bar No. 159936)
Adam T. Hoover (State Bar No. 243226)
4675 MacArthur Court, Suite 550
Newport Beach, CA 92660
Telephone: (949) 975-0512
Facsimile:  (949) 975-0514
E-mail:  mgr@reichradcliffe.com
         adhoover@reichradcliffe.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANNA CHOI, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>KIMBERLY-CLARK WORLDWIDE, INC.,<br><br>                    Defendant. | Case No.   8:19-cv-00468<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Janna Choi ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Kimberly-Clark Worldwide, Inc. ("Kimberly-Clark" or "Defendant") for the manufacture, marketing, and sale of U by Kotex® Sleek® Tampon products identified below.  Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF ACTION

1.     This is a class action against Defendant Kimberly-Clark Corporation for the manufacture and sale of U by Kotex® Sleek® Tampons in Regular, Super, and Super-Plus Absorbency (collectively, the "Products" or "Kotex Sleek Products"), all of which suffer from an identical design defect.  The Products are defective because they unravel and/or come apart upon removal (the "Defect"), and in some cases cause users to seek medical attention to remove tampon pieces left in the body.  Additionally, the defect can cause infections, vaginal irritation, localized vaginal injury, and other symptoms.  The defect renders the Products unsuitable for their principal and intended purpose.

2.     Plaintiff brings claims against Defendant individually and on behalf of a class of all other similarly situated purchasers of the Products for (1) fraud; (2) unjust enrichment; (3) violation of California's Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et. seq.*; (4) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; and (v) breach of implied warranty of fitness.

## PARTIES

3.     Plaintiff Janna Choi is, and at all times relevant to this action has been, a resident of Huntington Beach, California.  Ms. Choi has purchased U by Kotex® Sleek® Tampons, Regular Absorbency, at the rate of approximately one box per month from about September 2016 to the present.  Ms. Choi purchased the Products

primarily from stores in Huntington Beach like Target and Vons.  Ms. Choi would not have purchased the Products had she known that there was a significant risk that the Product was unfit to perform its intended purpose and dangerous.

4.     Ms. Choi reviewed the Product's packaging prior to purchase.  The product packaging could have disclosed the Defect, but did not.  Had there been a disclosure, Ms. Choi would not have bought the Products, or would not have purchased the Products on the same terms, because the safety defect would have been material to her.  Defendant disclosed on the packaging that the Products were tampons and described features typical of tampons, but did not disclose the Defect or have any warning about the defect.  Ms. Choi relied on the packaging in making her purchase decision.

5.     Defendant Kimberly-Clark Worldwide, Inc. is a Delaware corporation with its principal place of business at 351 Phelps Drive, Irving, Texas 75082.  Defendant manufactures, markets, and distributes the Products throughout the United States.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

7.     This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within California such that Defendant has significant, continuous, and pervasive contacts with the State of California.  Defendant is registered to do business in the State of California.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this District, a substantial part of the events giving rise to Plaintiff's claims took place within this District because Plaintiff purchased the Products in this District and resides in this District.

## COMMON FACTUAL ALLEGATIONS

### I. The Defect And Ensuing Recall

9. Defendant Kimberly-Clark is a multinational personal care corporation that generates roughly $18 billion in revenue a year. Defendant's brand name products include Kotex® feminine hygiene products, which it manufactures and markets. Throughout its website, Defendant boasts that "Billions of people choose our products each day to make a positive difference in their lives."

10. Unfortunately for many consumers who purchased these Products, they were not purchasing products that would "make a positive difference in their lives."

11. Indeed, the Products are defective because they pose a significant risk of unraveling and/or coming apart upon removal, and in some cases cause users to seek medical attention to remove tampon pieces left in the body. Additionally, the Defect can cause infections, vaginal irritation, localized vaginal injury, and other symptoms. The Defect renders the Products unsuitable for their principal and intended purpose. For all of the Products that Defendant sold, the Defect is substantially likely to materialize during the useful life of the product.

12. In December of 2018, Kimberly-Clark issued a recall of its U by Kotex® Sleek® Tampons, Regular Absorbency, that were manufactured between October 7, 2016 and October 16, 2018 and distributed between October 17, 2016 and October 23, 2018 due to a quality-related defect that could impact the performance of the product (the "Recall"). Specifically, Kimberly-Clark admitted that U by Kotex® Sleek® Tampons, Regular Absorbency are defective due the fact that they unravel and/or come apart upon removal as well as cause numerous other side effects described herein.

13. However, Kimberly-Clark's recall was insufficient. The recall was done so that Kimberly-Clark could claim it did the right thing in response to the Product Defect, when in fact the recall was calculated to protect Kimberly-Clark's profits by ensuring as few returns as possible. Instead of publicly offering a refund

of any kind, Kimberly-Clark merely instructed consumers to "stop using the product immediately and promptly call Kimberly-Clark's Consumer Service team," and to seek immediate medical attention for any symptoms such as vaginal injury, vaginal irritation, urogenital infections, hot flashes, abdominal pain, nausea, or vomiting following use of the impacted product.

14.    Furthermore, Kimberly-Clark limited its recall to that U by Kotex® Sleek® Tampons, Regular Absorbency, even though consumers complained of the same unraveling Defect described herein occurring in U by Kotex® Sleek® Tampons, Super Absorbency and U by Kotex® Sleek® Tampons, Super Plus Absorbency.  U by Kotex® Sleek® Tampons, Regular Absorbency, U by Kotex® Sleek® Tampons, Super Absorbency and U by Kotex® Sleek® Tampons, Super Plus Absorbency are virtually the same product with the exception of size and are intended for the same type of use, contain the same omissions on the packaging, and suffer from the same Product Defect.  Kimberly-Clark's recall is also ineffective because it limits its recall of U by Kotex® Sleek® Tampons, Regular Absorbency to certain lot codes, which it listed in its December 2018 press release.  However, there are no material differences between the tampons with the specified lot codes in the Recall and other tampons within the Kotex® Sleek® Tampons product line, all of which are encompassed within the definition of Kotex Sleek Products herein and suffer from the same Product Defect.[1]

15.    For example, 3 months ago, a consumer posted a product review on the Product's website about the Product Defect and referenced U by Kotex® Sleek® Tampons, Super Absorbency, saying that "the tampon started to come apart" and that she "had to go to the ER to get it out."[2]

---

[1] *See* https://investor.kimberly-clark.com/news-releases/news-release-details/kimberly-clark-announces-voluntary-recall-u-kotexr-sleekr (Last visited Mar. 7, 2019).
[2] *See* https://www.ubykotex.com/en-us/products/tampons/sleek-super-tampon (Last visited Mar. 7, 2019).

16.     Numerous other consumers complained of the Product Defect in relation to U by Kotex® Sleek® Tampons, Super Absorbency and Super Plus Absorbency, stating that "this tampon fell apart inside of me!", and "tampons have literally fallen apart inside me while removing them."  Each time, Defendant responded to the inquiry, directing the consumer to contact customer support:



17.     Defendant has been on notice of the Product Defect for years and did nothing about it.  For instance, six years ago, a consumer posted a product review on the Product's website about the Product Defect and referenced U by Kotex® Sleek® Tampons, Super Plus Absorbency.  Specifically, the consumer stated "I am just going to say what is annoying me about their whole brand of tampons.  You can br[e]ak[] them apart with your hands…Buy a tampon that is going to work and not fall apart every time you use it.":



★☆☆☆☆ miranda · 6 years ago

**DONT**

ok i am just going to say what is annoying me about their whole brand of tampons. You can brake them apart with your hands. Don't just buy them because the "pretty" box and paper because if you think about it you are not keeping the box or wrapping paper. Buy a tampon that is going to work and not fall apart every time you use it. I am sorry i love their liners and pads but just do not buy their tampons they are a waste of money. JUST SAYING USE PLAYTEX SPORT OR GENTLE GLIDE. BEST EVER!!!!

⊗ No,  I do not recommend this product.

Helpful?   Yes · 17   No · 24   Report

//

18.     A consumer complaint on Defendant's website also states that although not included in the lot codes, and not regular absorbency, the consumer's Product was still affected by the Defect:

//

//

//

//

//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

 ★☆☆☆☆ ThaliaG · 3 months ago      🎁 Received Free Product

**BOUGHT DIFFERENT ABSORBENT AND STILL SUCK**

I have bought 3 different boxes of sleek and all of the. Have fallen apart on me. I swear up and down that if I stay with kotex the only type I will buy is the click ones. As with every cycle I use two different types of absorbents none have stayed together. I was very disappointed. I figured it was just that two boxes were gifted to me as they are sleek supers and falls apart also. But even my regular ones do. Then when I go to check the webpage about the recall it tells me that the lot number and department number are invalid. There goes 52 supers in the trash and 18 regular plus what ever I have left from my two open boxes that are in my container in my bathroom. Very disappointed

Did you receive a sample?  Yes

⊗ No,  I do not recommend this product.



Helpful?   Yes · 1    No · 0    Report

 **RESPONSE FROM U BY KOTEX®:**

 Community Manager  · U by Kotex Brand · 3 months ago

We appreciate your loyalty, ThaliaG, and we're happy that you're a fan of our U by Kotex Click Tampons. Your health and well-being are of the utmost importance to us. The recall is for specific lots of U by Kotex Sleek Tampons, Regular Absorbency. U by Kotex Sleek Tampons, Super and Super Plus Absorbencies are not affected by this recall. Current shipments to stores meet our high quality standards, and if your lot and department code numbers are not included, your product is not included in the recall. We'd like to speak with you personally about your experience, so please call us at 1-888-255-3499 or contact us here: http://bit.ly/2EiLhMe. Thank you.

19.     The Recall was insufficient because it did not include U by Kotex®
Sleek® Tampons, Super and Super and Super Plus Absorbency, it came too late and
it was too narrow in timeframe.  In fact, all Kotex Sleek Products, regardless of
absorbency size or lot code, were affected by the Defect.

**II.  Kimberly-Clark's Pre-Sale Knowledge Of The Defect**

20.     Years before issuing the recall, Kimberly-Clark received complaints of
tampons unraveling and/or coming apart upon removal and complaints of infection,
irritation, and localized injury.

21.     In fact, Defendant knew about the Defect through dozens of reviews
posted *on its own website*.  As far as 6 years ago, numerous consumers posted
product reviews about the Product's defective nature on Kimberly Clark's website,
www.ubykotex.com, which Kimberly-Clark actively monitors.

22.     For each poor review, Kimberly-Clark responded to the consumer and
directed them to contact customer service.

23.     For example, 5 months ago, a consumer stated that she "had serious
issues with the Sleek Regular tampons.  Upon removal, the tampon starts to
unravel…I have also purchased 2 boxes, at separate times, thinking the original box
must have been a bad batch.  The first box had roughly 40% that were defective; I've
only used 9 from the new box and 4 of them were faulty…Scary and unacceptable!":

//

//

//

//

//

//

//

//

//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22



★☆☆☆☆ Beansie79 · 5 months ago

**INCONSISTENT QUALITY**

Much like another reviewer, I have had serious issues with the Sleek Regular tampons. Upon removal, the tampon starts to unravel, causing me to have to manually remove the remaining tampon. I have also purchased 2 boxes, at seperate times, thinking the original box must have been a bad batch. The first box had roughly 40% that were defective; I've only used 9 from the new box and 4 of them were faulty. Has there been a change in manufacturing??? Scary and unacceptable! I've used Kotex for as long as I can remember and am so disappointed!

Did you receive a sample? No

Helpful?   Yes · 2    No · 1    Report

**RESPONSE FROM U BY KOTEX®:**

Community Manager · UbyKotex Brand · 5 months ago

We share your concern with your recent experience and we assure you that your health and well-being are our top priorities. We have not made any recent changes to our tampons so what you described is not something we would expect. We value your loyalty, and we'd like to talk to you further so we can learn more about what happened. If you can, please hold on to the remaining product and contact us by phone at 1-877-485-6839 (Monday through Friday; 7:30 a.m. – 7 p.m. Central Time) or online at https://www.ubykotex.com/en-us/contact-us so we can help. We hope to hear from you soon.

23      24.   4 months ago, another consumer posted a review that "multiple times I
24  have had the tampons completely rip apart while removing them" and Defendant
25  responded:
26  //
27  //
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



★☆☆☆☆ rwalker2891 · 4 months ago

**FALLS APART!**

I use many different brands and thought I'd try these. I will say the grip is
nice. However, multiple times I have had the tampons completely rip
apart while removing them when they aren't completely filled. Will not
repurchase and will stick with tampax from now on.

Did you receive a sample?  No

⊗ No,  I do not recommend this product.

Helpful?   Yes · 2    No · 1    Report

**RESPONSE FROM U BY KOTEX®:**

Community Manager  · U by Kotex Brand · 4 months ago

We're disappointed to hear about this, rwalker2891, because
your health and well-being are very important to us. What you
experienced is certainly not something you should expect
when using our tampons, and we take feedback like yours very
seriously. If you have any further concerns, we suggest
reaching out to your doctor. Also, we'd like to talk to you about
your experience and see what we can do to help. Please hold
onto the product and packaging and give us a call at 1-877-
485-6839 Monday–Friday from 7:30 a.m. to 7 p.m. CT or
contact us here: https://www.ubykotex.com/en-us/contact-
us/ when you have a minute. Thanks, and we look forward to
speaking with you soon.

21
22
23
24
25
26
27
28

25.    5 months ago, a consumer reported that "THE TAMPON RIPPED IN

HALF!!! I thought maybe this was just maybe a one time thing…I used them again,

AND IT HAPPENED AGAIN!!!"  Again, Defendant responded:

//

//

//

//



★☆☆☆☆ girl with lady parts · 5 months ago

**SCARY!!**

I bought this product a while ago and I used it on my heaviest flow tried to remove it...AND THE TAMPON RIPPED IN HALF!!! I thought maybe this was just maybe a one time thing so the next time I had my period I used them again, AND IT HAPPENED AGAIN!! I've always liked the U by Kotex Click so i decided to use this kind to try something new, and i was disappointed.

Did you receive a sample?  No

⊗ No,  I do not recommend this product.

Helpful?   Yes · 3   No · 1   Report

**RESPONSE FROM U BY KOTEX®:**

Community Manager · U by Kotex Brand · 5 months ago

Your health and well-being are very important to us, girl with lady parts, and we're disappointed to hear you had this experience. This is definitely not what you should expect when using our Sleek Tampons. We would like to personally speak with you so we can better understand what happened and see how we can help make this right. Please hang onto the packaging and product, and then contact us at 1-877-485-6839 Monday-Friday from 7:30 a.m. to 7 p.m. CT or https://www.ubykotex.com/en-us/contact-us/. Thank you, and we hope to hear from you.

26.    Again, yet another consumer complained that the Product "pulled apart" as the consumer was removing it.  She stated, "It has happened twice now."  Again, Defendant responded to the consumer:

//

//

//

//



27.    Like most companies who offer customers an opportunity to post reviews on their websites, Kimberly-Clark regularly monitors on-line customer reviews because they provide valuable data regarding quality control issue, customer satisfaction and marketing analytics.  Regularly and thoroughly monitoring reviews is also standard business practice for managing the company's on-line reputation. And, like most companies, Kimberly-Clark pays particular attention to 1-star reviews like those copied above because extreme reviews are sometimes the result of extreme problems, and Kimberly-Clark is sensitive to the reputational impact of negative on-line reviews.  As a result of this policy, Kimberly-Clark's management was aware of

the above-referenced consumer complaints shortly after each complaint was posted on the company website because each complaint was responded to.

28.    Kimberly Clark's management pays close attention when customers make similar complaints about a product, because that indicates the complaints are not the result of user error or an anomalous incident, but instead a systemic problem with the product.  Kimberly-Clark also knows that when there are many similar complaints from customers, then it is often the case that for every person who complains about a defect, there are other people who experienced the same defect but who did not complain.  Here, the reports and complaints from consumers were similar enough, and numerous enough, to put Kimberly-Clark on notice that the incidents described were the result of a design defect, and Kimberly-Clark knew that the Products were experiencing unusually high levels of complaints about the Defect.

29.    Kimberly-Clark profited enormously from its failure to disclose the Product Defect sooner.   The only reason Kimberly-Clark did not disclose the defect sooner is that it deemed making money more important than protecting its customers from the dangers relating to the Products.

30.    The defect at issue here involves a critical safety-related component of the Products, and it was unsafe to use the Products because of their substantial likelihood of unravelling and/or coming apart upon removal or causing infection, irritation and/or injury.  Defendant had exclusive knowledge of the Defect, which was not known to Plaintiff or class members.

31.    Defendant made partial representations to Plaintiff and class members, while suppressing the safety defect.  Specifically, by displaying the Product and describing its features, the product packaging implied that the Product was suitable for use as a tampon, without disclosing that the Products had a critical safety-related defect that could result in harm to users of the Product.

## CLASS REPRESENTATION ALLEGATIONS

32.     Plaintiff seeks to represent a class defined as all persons in the United States who purchased the Products from March 8, 2013 to the present (the "Class"). Excluded from the Class are persons who made such purchases for purpose of resale.

33.     Plaintiff also seeks to represent a subclass of all Class Members who purchased the Products in the State of California (the "California Subclass").

34.     At this time, Plaintiff does not know the exact number of members of the aforementioned Class and Subclass ("Class Members" and "Subclass Members," respectively); however, given the nature of the claims and the number of retail stores in the United States selling Defendant's Products, Plaintiff believes that Class and Subclass members are so numerous that joinder of all members is impracticable.

35.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include, but are not limited to:

(a)     whether Defendant misrepresented and/or failed to disclose material facts concerning the Products;

(b)     whether Defendant's conduct was unfair and/or deceptive;

(c)     whether Defendant has been unjustly enriched as a result of the unlawful conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiff and the Class;

(d)     whether Plaintiff and the Class have sustained damages with respect to the common law claims asserted, and if so, the proper measure of their damages.

36.     With respect to the California Subclass, additional questions of law and fact common to the members that predominate over questions that may affect

individual members include whether Defendant violated the California Consumer Legal Remedies Act as well as California's False Advertising law.

37.    Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased, in a typical consumer setting, Defendant's Products, and Plaintiff sustained damages from Defendant's wrongful conduct.

38.    Plaintiff will fairly and adequately protect the interests of the Class and Subclasses and has retained counsel that is experienced in litigating complex class actions.  Plaintiff has no interests which conflict with those of the Class or the Subclass.

39.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

40.    The prosecution of separate actions by members of the Class and the Subclass would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not.  Additionally, individual actions could be dispositive of the interests of the Class and the Subclass even where certain Class or Subclass members are not parties to such actions.

## COUNT I

### (Fraud by Omission)

41.    Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

42.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

43.    This claim is based on fraudulent omissions concerning the safety of consumers who use the Products.  As discussed above, Defendant failed to disclose that the Products had a dangerous Defect, or that the Defect was substantially likely to manifest through the customary and intended use of the Products.

44.     The false and misleading omissions were made with knowledge of their falsehood.  Defendant is a nationwide personal care product distributor who knew of reports of the Products' defective and dangerous nature.  Nonetheless, Defendant continued to sell its worthless and dangerous tampons to unsuspecting consumers.

45.      The false and misleading omissions were made by Defendant, upon which Plaintiff and members of the proposed Class and California Subclass reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and members of the proposed Class and California Subclass to purchase the Products.

46.     The fraudulent actions of Defendant caused damage to Plaintiff and members of the proposed Class and Subclass, who are entitled to damages and other legal and equitable relief as a result.

## COUNT II
### (Unjust Enrichment)

47.     Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

48.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

49.     Plaintiff and Class members conferred benefits on Defendant by purchasing the Products.

50.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of the Products.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant failed to disclose that the Products were unfit for use as tampons, or that the Defect was substantially likely to manifest through the customary and intended use of the Products.  These omissions caused injuries to Plaintiff and Class members because they would not have purchased the Products if the true facts were known.

51.     Retention of those moneys also is unjust and inequitable because, as alleged above, Kimberly-Clark commenced an ineffective recall that was calculated to result in few returns, and generally no refunds, thereby protecting profits Kimberly-Clark collected from selling the defective products.

52.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and Class members for its unjust enrichment, as ordered by the Court.

## COUNT III

**Violation of California's Consumers Legal Remedies Act ("CLRA"),
California Civil Code § 1750, *et seq.*
(Injunctive Relief Only)**

53.     Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

54.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

55.     Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

56.     Defendant violated Civil Code § 1770(a)(5), (a)(7) and (a)(9) by holding out Products as fit for use as tampons, when in fact the products were defective, dangerous, and useless.

57.     The Defect involves a critical safety-related component of the Products, and it was unsafe to use the Products with the defect.

58.     Defendant had exclusive knowledge of the Defect, which was not known to Plaintiff or class members.

59.     Defendant made partial representations to Plaintiff and class members, while suppressing the safety Defect.  Specifically, by displaying the Product and describing its features, the product packaging and Defendant's website implied that the Product was suitable for use as a tampon, without disclosing that the Product had a critical safety-related Defect that could result in harm to users of the Product.

60.     Plaintiff and the members of the California Subclass have suffered harm as a result of these violations of the CLRA because they have incurred charges and/or paid monies for the Products that they otherwise would not have incurred or paid.

61.     On March 8, 2019, prior to the filing of this Complaint, Plaintiff's counsel sent Defendant a CLRA notice letter, which complies in all respects with California Civil Code §1782(a).  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of Plaintiff and all other similarly situated purchasers.  A true and correct copy of Plaintiff's CLRA letter is attached hereto as Exhibit A.  If Defendant fails to take corrective action within 30 days of receipt of the demand letter, Plaintiff will amend her complaint to include a request for damages as permitted by Civil Code § 1782(d).

62.     Wherefore, Plaintiff presently only seeks injunctive and equitable relief for this violation of the CLRA.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT IV
### (Violation California's Unfair Competition Law)

63.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

64.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

65.     By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the California Subclass, by engaging in unlawful, fraudulent, and unfair conduct.

66.     Defendant has violated the UCL's proscription against engaging in unlawful conduct as a result of its violations of the CLRA, Cal. Civ. Code § 1770(a)(5) and (a)(7) as alleged above.

67.     Defendant's acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

68.     As more fully described above, Defendant's misleading marketing, advertising, packaging, and labeling of the Products is likely to deceive reasonable consumers.

69.     Defendant's acts and practices described above also violate the UCL's proscription against engaging in unfair conduct.

70.     Plaintiff and the other California Subclass members suffered a substantial injury by virtue of buying the Products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omission about the defective nature of the Products.

71.     There is no benefit to consumers or competition from deceptively marketing and omitting material facts about the defective nature of the Products.

72.     Plaintiff and the other California Subclass members had no way of reasonably knowing that the Products they purchased were not as marketed,

advertised, packaged, or labeled.  Thus, they could not have reasonably avoided the injury each of them suffered.

73.     The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other members of the California Subclass.

74.     Pursuant to California Business and Professional Code § 17203, Plaintiff and the California Subclass seek an order of this Court that includes, but is not limited to, an order requiring Defendant to:

(a)     provide restitution to Plaintiff and the other California Subclass members;

(b)     disgorge all revenues obtained as a result of violations of the UCL;

(c)     pay Plaintiff's and the California Subclass' attorney's fees and costs.

## <u>COUNT V</u>
### (Breach of Implied Warranty of Fitness and Merchantability)

75.     Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

76.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

77.     Defendant is, and at all relevant times was, a merchant engaged in the business of manufacturing and distributing, among other things, Kotex Sleek Products.

78.     Plaintiff and the Class Members purchased the Products.

79.     Defendant is a manufacturer and merchant with respect to goods of this kind, which were sold to Plaintiff and other consumers, and there was in the sale to

Plaintiff and other consumers an implied warranty that those goods were merchantable and that they were fit for their intended use as tampons.

80.     However, Defendant breached that warranty implied in the contract for the sale of goods in that Kotex Sleek Products are completely unusable, lack even the most basic degree of fitness for ordinary or intended use, and are not safe for human use as set forth in detail herein above.

81.     The Products are defective and unusable because they were distributed to the public containing a harmful Defect, and because the Defect was substantially likely to manifest through the customary and intended use of the Products.  As a result, the Products were not usable and dangerous to the health of its consumers.

82.     Defendant admitted that the Products were completely unusable and unfit for normal use when it initiated the recall described in detail herein above.

83.     As a direct and proximate result of this breach of warranty by Defendant, Plaintiff and other consumers have been damaged by paying monies for products that are completely unusable and unfit for their intended purpose. Plaintiff seeks damages in an amount to be proven at trial for the injuries suffered from Defendant's breach of the implied warranties.  The damages suffered by Plaintiff and the Class Members include, but are not limited to, the monies paid to Defendant for the Products.

84.     As a result of Defendant's conduct, Plaintiff did not receive goods as impliedly warranted by Defendant to be merchantable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

   a.     For an order certifying the nationwide Class and the Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Subclass and

1          Plaintiff's attorneys as Class Counsel to represent the Class and

2          Subclass members;

3       b.    For an order declaring the Defendant's conduct violates the

4          statutes referenced herein;

5       c.    For an order finding in favor of Plaintiff, the nationwide Class,

6          and the Subclass on all counts asserted herein;

7       d.    For compensatory and punitive damages in amounts to be

8          determined by the Court and/or jury;

9       e.    For pre-judgment interest on all amounts awarded;

10       f.    For an order of restitution and all other forms of monetary relief;

11       g.    For an order awarding Plaintiff and the Class and Subclass their

12          reasonable attorneys' fees and expenses and costs of suit.

13   <u>**DEMAND FOR TRIAL BY JURY**</u>

14   Plaintiff demands a trial by jury of all issues so triable.

15   Dated: March 8, 2019         **BURSOR & FISHER, P.A.**

16

17           By:    <u>*/s/ Blair E. Reed*</u>

18                Blair. E. Reed

19           L Timothy Fisher (State Bar No. 191626)

20           Yeremey Krivoshey (State Bar No. 295032)
         Blair E. Reed (State Bar No.316791)

21           1990 North California Blvd., Suite 940
         Walnut Creek, CA 94596

22           Telephone: (925) 300-4455
         Facsimile:  (925) 407-2700

23           E-mail: ltfisher@bursor.com

24                 ykrivoshey@bursor.com
              breed@bursor.com

25

26           **REICH RADCLIFFE & HOOVER LLP**
        Marc G. Reich (State Bar No. 159936)

27           Adam T. Hoover (State Bar No. 243226)
        4675 MacArthur Court, Suite 550

28           Newport Beach, CA 92660

Telephone: (949) 975-0512
Facsimile:  (949) 975-0514
E-mail:  mgr@reichradcliffe.com
                adhoover@reichradcliffe.com

*Attorneys for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Yeremey Krivoshey, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff Janna Choi in this action.  Plaintiff Janna Choi resides in Huntington Beach, California.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Central District of California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 8th day of March 2019.


_____
Yeremey Krivoshey

**EXHIBIT A**

# BURSOR & FISHER
### P.A.

1990 N. California Blvd.
SUITE 940
WALNUT CREEK, CA 94596
www.bursor.com

YEREMEY KRIVOSHEY
Tel: 925.300.4455
Fax: 925.407.2700
ykrivoshey@bursor.com

March 8, 2019

*<u>Via Certified Mail - Return Receipt Requested</u>*

Kimberly-Clark Worldwide, Inc.
351 Phelps Drive
Irving, TX 75082

Kimberly-Clark Worldwide, Inc.
400 Goody's Lane, Suite 100
Knoxville, TN 37922

CT Corporation System
818 West Seventh Street, Suite 930
Los Angeles, CA 90017

Re:     *Demand Letter Pursuant to California Civil Code § 1782, and other applicable laws.*

To Whom It May Concern:

This letter serves as a notice and demand for corrective action on behalf of my client, Janna Choi, and all other persons similarly situated, arising from violations of numerous provisions of California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(5), (7), and (9). This letter also serves as notice pursuant to Cal. Com. Code § 2607(3)(a) concerning the breaches of implied warranties described herein.

You have participated in the manufacture, marketing, and sale of U by Kotex® Sleek® Tampons, Regular Absorbency, U by Kotex® Sleek® Tampons, Super Absorbency and U by Kotex® Sleek® Tampons, Super Plus Absorbency (the "Products"). Each of these products suffer a design defect (the "Defect") because they pose a significant risk of unraveling and/or coming apart upon removal, and in some cases cause users to seek medical attention to remove tampon pieces left in the body. Additionally, the Products can cause infections, vaginal irritation, localized vaginal injury, and other symptoms. The Defect renders the Products unsuitable for their principal and intended purpose. Further, on the packaging of the Products, you have failed to disclose the Defect or disclose any warning that the Defect may manifest and cause customers substantial harm.

In December of 2018, you issued a recall of U by Kotex® Sleek® Tampons, Regular Absorbency, that were manufactured between October 7, 2016 and October 16, 2018 and distributed between October 17, 2016 and October 23, 2018 due to the Defect. However, your

recall did too little too late.  It was far too narrow, as it did not include all of the affected Products, which are not materially different in any relevant way and suffer from the same Defect. Further, you did not disclose or provide notice that you would offer any refunds or compensation to customers who bought the products affected by the recall, even though you admitted that the products are not safe for human use and should be thrown out.

Ms. Choi. Burke, a resident of California, purchased U by Kotex® Sleek® Tampons, Regular Absorbency within the past three years primarily from stores in Huntington Beach like Target and Vons.  Ms. Choi would not have purchased the Products had she known that there was a significant risk that the Products were unfit to perform their intended purpose and were dangerous.  Ms. Choi reviewed the Product's packaging prior to purchase.  The product packaging could have disclosed the Defect, but did not.  Had there been a disclosure, Ms. Choi would not have bought the Products, or would not have purchased the Products on the same terms, because the safety defect would have been material to her.

Ms. Choi is acting on behalf of all purchasers of the Products within the United States within the past six years.  Ms. Choi is also specifically acting on behalf of purchasers of the Products in California.

To cure the defects described above, we demand that you (1) issue an immediate recall on any Products still on the market; and (2) make full restitution to all purchasers of the Products of all purchase money obtained from sales thereof.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1. All documents concerning the ingredients, formula, testing, and manufacturing process for the Products;

2. All communications with the U.S. Food and Drug Administration, the National Advertising Division, or the Federal Trade Commission concerning the product development, manufacturing, marketing and sales of the Products;

3. All documents concerning the advertisement, marketing, or sale of the Products;

4. All communications with customers concerning complaints or comments concerning the Products; and

5. All documents and communications concerning the potential or tendency of the Products to unravel or otherwise cause harm to consumers in any manner.

We are willing to negotiate to attempt to resolve the demands asserted in this letter.  If you wish to enter into such discussions, please contact me immediately.  If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents promptly.

BURSOR & FISHER
P.A.

Very truly yours,

Yeremey Krivoshey